## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | |
|---|---|
| JORDAN KERSAINT, | : |
| Plaintiff, | : |
| v. | : Case No. 7:25-cv-38-WLS-ALS |
| LT DANIEL, *et al.*, | : |
| Defendants. | : |

### ORDER AND RECOMMENDATION

In accordance with instruction from this Court (Doc. 7), Plaintiff Jordan Kersaint, a *pro se* litigant, filed a Recast Complaint (Doc. 10) and a motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 11). Plaintiff also filed a motion for appointed counsel. (Doc. 8). For the following reasons, Plaintiff's motion to proceed IFP is **GRANTED** but his motion for appointed counsel is **DENIED**. Plaintiff's excessive force claims against Defendant Daniel shall proceed for further factual development. It is **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED without prejudice**.

### MOTION TO PROCEED IN FORMA PAUPERIS

Plaintiff first seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). Plaintiff's submissions demonstrate that he is presently unable to pay the cost of commencing this action. His application to proceed IFP (Doc. 11) is therefore **GRANTED**.

However, a prisoner allowed to proceed *in forma pauperis* must still pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets, he must pay the filing fee in a lump sum. If sufficient assets are not in the account, the court must assess an

initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is **ORDERED** that his Complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

I.      Directions to Plaintiff's Custodian

Plaintiff is required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee. The Clerk of Court is **DIRECTED** to send a copy of this Order to the business manager of the facility in which Plaintiff is incarcerated. It is **ORDERED** that the warden of the institution in which Plaintiff is incarcerated, or the sheriff of any county in which he is held in custody, and any successor custodians, shall each month cause to be remitted to the clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is authorized to forward payments from the prisoner's account to the clerk of court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

II.   Plaintiff's Obligations on Release from Custody

Plaintiff should keep in mind that his release from incarceration/detention does not release him from his obligation to pay the installments incurred while he was in custody. Plaintiff must pay those installments justified by the income in his prisoner trust account while he was detained. If Plaintiff fails to remit such payments, the Court authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law. Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## MOTION FOR APPOINTED COUNSEL

Plaintiff next seeks appointed counsel. "Appointment of counsel in a civil case is not a constitutional right. It is a privilege that is justified only be exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990). "A court's appointment of counsel in a civil case is warranted only in exceptional circumstances, and whether such circumstances exist is committed to the district court's discretion." *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013) (citing *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996)). In determining whether a case presents extraordinary circumstances, the Court considers:

> (1) the type and complexity of the case; (2) whether the plaintiff is capable of adequately presenting his case; (3) whether the plaintiff is in a position to adequately investigate the case; (4) whether the evidence "will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination"; and (5) whether the appointment of counsel would be of service to the parties and the court "by sharpening the issues in the case, shaping the examination of witnesses, and thus shortening the trial and assisting in a just determination."   The District Court may also inquire into whether the plaintiff has made any effort to secure private counsel.

*DeJesus v. Lewis*, 14 F.4th 1182, 1204-05 (11th Cir. 2021) (quoting *Ulmer v. Chancellor*, 691 F.2d

209, 213 (5th Cir. 1982)).

The Court has considered Plaintiff's motion and—after applying the factors set forth above—concludes that the appointment of counsel is not justified. Plaintiff has demonstrated the ability to litigate his case, including filing pleadings and motions sufficiently setting out his contentions to allow review by this Court. Additionally, at this early stage in the litigation, it is unclear if the case will proceed to trial. Accordingly, there is no basis to conclude that counsel will be needed for the presentation of evidence or cross examination of witnesses. Plaintiff, "like any other litigant[], undoubtedly would [be] helped by the assistance of a lawyer, but [his] case is not so unusual" that appointed counsel is necessary. *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). As such, Plaintiff's motion for appointment of counsel (Doc. 8) is **DENIED**.[1] Should it later become apparent that legal assistance is required to avoid prejudice to Plaintiff's rights, the Court, **on its own motion**, will consider assisting him in securing legal counsel at that time. Consequently, there is no need for Plaintiff to file additional requests for counsel.

## PRELIMINARY SCREENING OF PLAINTIFF'S RECAST COMPLAINT

I.  Standard of Review

The PLRA directs courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. 28 U.S.C. § 1915A(a). Courts must also screen complaints filed by a plaintiff proceeding IFP. 28 U.S.C. § 1915(e). Both statutes apply in this case, and the standard of review is the same. "*Pro se* filings are generally held to a less stringent standard than those drafted by attorneys and are liberally construed."

---

[1] The federal *in forma pauperis* statute authorizes courts to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The statute does not, however, provide any funding to pay counsel for their representation or authorize courts to compel counsel to represent an indigent party in a civil action. *See Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 310 (1989); *Taylor v. Pekerol*, 760 F. App'x 647, 651 (11th Cir. 2019) (stating that district court has no "inherent power" to compel counsel to represent a civil litigant and § 1915 provides no such authority).

*Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted). On preliminary review, the Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id*. (citations omitted). A claim can be dismissed as malicious if it is knowingly duplicative or otherwise amounts to an abuse of the judicial process. *Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id*. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy

5

these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See, e.g.*, *Bingham v. Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

II.     Factual Allegations

Plaintiff's claims arise from his present incarceration at the Valdosta State Prison ("VSP"). (Doc. 10, at 5). According to the Recast Complaint, on January 31, 2025, Plaintiff's cellmate said he "want[ed] to kill himself." *Id.*[2] Plaintiff's cellmate was temporarily removed from the cell, but Defendant Daniel—a prison lieutenant—returned with the cellmate later that same day. *Id.* Plaintiff told Defendant Daniel that he did not want his cellmate placed back in the cell because the cellmate was "not . . . in a right state of mind and on meth." *Id.* Therefore, Plaintiff requested to be moved to a different cell or assigned a different cellmate. *Id.* Plaintiff alleges Defendant Daniel "said no and pepper sprayed [Plaintiff] 3 times." *Id.* Plaintiff further contends Defendant Daniel did not allow Plaintiff to shower or clean the cell after she sprayed him with pepper spray. *Id.* Defendant Daniel moved Plaintiff to a different cell later that day, but she "took all [his] property," did not allow him to shower for a week, and did not allow him to use the telephone for 30 days. *Id.*

In addition to Defendant Daniel, Plaintiff also sues another prison lieutenant, Defendant McClendon. (Doc. 10, at 1). He contends Defendants' action and inaction violated his

---

[2] The Recast Complaint is the operative pleading in this action. *See Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (holding that generally, "[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averment against his adversary" (alteration in original) (citation omitted)). Plaintiff has not named Valdosta State Prison or Valdosta, Georgia, as Defendants in his Recast Complaint. These Defendants may therefore be terminated, and Defendants McClendon and Daniel should be added. The Clerk is **DIRECTED** to amend the docket accordingly.

6

constitutional rights, and as a result he seeks monetary damages, to have Defendants fired from their positions at the jail, the cleaning of black mold at the prison, and "for all the inmates to get yard call, phone calls, 3 showers a week call, store call, G.E.D. school, therapy, tablets, and books." *Id.* at 6.

   III.   Plaintiff's Claims

      A.   *Claims against Defendant McClendon*

As an initial matter, although Plaintiff identified Defendant McClendon in the caption of his Recast Complaint, he does not mention Defendant McClendon at all in his statement of claims or otherwise explain how Defendant McClendon violated his constitutional rights. Absent Plaintiff pleading specific facts to connect Defendant McClendon to an alleged constitutional violation, Plaintiff cannot state an actionable claim against Defendant McClendon. Plaintiff's claims against Defendant McClendon should therefore be dismissed without prejudice. *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation).

      B.   *Excessive Force Claims against Defendant Daniel*

Plaintiff next alleges that Defendant Daniel used excessive force against him when she sprayed him with pepper spray and failed to allow him to decontaminate afterwards. The Eighth Amendment's prohibition against cruel and unusual punishment forbids the "unnecessary and wanton infliction of pain," including the use of excessive force. *Moore v. Hunter*, 847 F. App'x 694, 697 (11th Cir. 2021) (quoting *Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th Cir. 2010)). "In the prison context, an excessive force claim 'requires a two-prong showing: an objective showing of a deprivation or injury that is sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities and a subjective showing that the official had a sufficiently culpable

7

state of mind.'" *Id.* (quoting *Thomas*, 614 F.3d at 1304). The objective showing "is responsive to contemporary standards of decency," and thus even "a de minimis use of force is cognizable under the Eighth Amendment if it is 'repugnant to the conscience of mankind.'" *Id.* (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010)). To show subjective intent, the prisoner must show that a prison official applied force to a prisoner "maliciously and sadistically to cause harm" rather than "in a good faith effort to maintain or restore discipline." *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)); *Williams v. Radford*, 64 F.4th 1185, 1195 (11th Cir. 2023). To determine whether force was applied maliciously or sadistically to cause harm, the court considers factors which include:

> (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

*Williams*, 64 F.4th at 1196-97 (quoting *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999)).

Construing Plaintiff's allegations liberally and accepting them as true, as the Court must at this stage, Plaintiff alleges that Defendant Daniel sprayed him three times because he expressed concern for his safety and wanted a different cellmate. (Doc. 10, at 5) (stating that he told Defendant Daniel he "feel [sic] for both our lives"). Plaintiff does not allege that he posed a threat to Defendant Daniel or that there was any other reason for her to apply force at that time. *See id.* Further, Plaintiff alleges Defendant Daniel did not attempt to temper the severity of her response by allowing Plaintiff to shower; instead, she refused to allow him to shower for a week. *Id.* Plaintiff does acknowledge, however, that Defendant Daniel "moved [him] that day to another room[.]" *Id.* Despite the close nature of this issue, as Plaintiff acknowledges that Defendant Daniels relocated

8

him to a different room, the Court finds that at this preliminary stage, Plaintiff has pleaded sufficient factual allegations to permit this claim to advance for further factual development. *See, e.g.*, *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008) (holding that prison officials used excessive force "in the form of extended confinement in [a] small, poorly ventilated, pepper spray-filled cell, when there were other readily available alternatives"), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010); *Nasseri v. City of Athens*, 373 F. App'x 15, 19 (11th Cir. 2010) (holding that "continued confinement of [detainee] in an unventilated patrol car without decontamination constituted excessive force").

### C.  Medical Treatment Claims against Defendant Daniel

Plaintiff also briefly states that Defendant Daniel "stop[ped him] from getting help and from [him] seeking mental health counselor and medical." (Doc. 10, at 6). It is unclear whether these allegations are related to the pepper-spraying incident. Nevertheless, a prisoner who demonstrates that a prison official was deliberately indifferent to his serious medical needs can state a constitutional claim. *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). To do so, a plaintiff must allege facts sufficient to establish: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009) (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)). In this context, a "serious medical need," is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (citation omitted). A serious medical need can also arise if "a delay in treating the need worsens the condition." *Mann*, 588 F.3d at 1307. "In either case, 'the medical need must be one that, if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Farrow*, 320 F.3d at

9

1243).

Plaintiff has not specifically identified any serious medical or mental health need for which any prison official denied him treatment. While the effects of being pepper-sprayed may result in the development of a serious medical need, Plaintiff has not alleged that he suffered any ill effects in this case. *Cf., e.g.*, *Nasseri*, 373 F. App'x at 19-20 (pepper spray caused serious medical need where inmate suffered from "watering eyes, was coughing, had difficulty breathing, and was spitting blood").[3] Plaintiff has therefore failed to plead an actionable Eighth Amendment claim based on his allegations that he was denied medical or mental health treatment, and all such claims should be dismissed without prejudice.

### D. Personal Property Claims against Defendant Daniel

Plaintiff also alleges that Defendant Daniel took his property after she pepper-sprayed him. (Doc. 10, at 5). To the extent Plaintiff may be attempting to assert a due process claim based on the loss of his property, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). "Georgia provides a civil cause of action for the wrongful conversion of personal property, and [the Eleventh Circuit has] held that this cause of action constitutes a suitable postdeprivation remedy for procedural due process violations." *Moore v. McLaughlin*, 569 F. App'x 656, 658 (11th Cir. 2014) (first citing O.C.G.A. § 51-10-1; and then citing *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991)). Plaintiff has not alleged that he has attempted to pursue a civil action based on Defendants' actions or that such a remedy is not

---

[3] The Court emphasizes that Plaintiff's failure to plead facts sufficient to establish a serious medical need does not defeat his excessive force claim. *See, e.g.*, *Wilkins*, 559 U.S. at 38 ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

10

available to him, and he has therefore failed to state a due process claim concerning the loss of his personal property. These claims should be dismissed without prejudice.

E.   *Hygiene Claims against Defendant Daniel*

Plaintiff next contends that Defendant Daniel refused to allow him to shower for a week. (Doc. 10, at 5). The deprivation of basic hygiene and sanitation can amount to a constitutional violation. *See, e.g.*, *Brooks v. Warden*, 800 F.3d 1295, 1303-04 (11th Cir. 2015) (recognizing "'well established' Eighth Amendment right 'not to be confined . . . in conditions lacking basic sanitation'") (alteration in original) (quoting *Chandler v. Baird*, 926 F.2d 1057, 1065-66 (11th Cir. 1991)). In this case, however, the fact that Plaintiff was not allowed to shower for one week on a single occasion does not rise to the level of a constitutional violation. *See, e.g.*, *Ellis v. Pierce Cnty., Ga.*, 415 F. App'x 215, 218 (11th Cir. 2011) (holding that denial of showers to inmate for up to two weeks at a time "'several times' over the course of his fifteen-month detention" did not amount to constitutional claim); *see also Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) (observing that "limiting inmates to weekly showers does not violate the Eighth Amendment").[4] Consequently, these claims are likewise subject to dismissal.

F.   *Denial of Phone Access Claims against Defendant Daniel*

Plaintiff next alleges Defendant Daniel denied him access to use the telephone for 30 days. (Doc. 10, at 5). Though "prison inmates retain a right under the First Amendment to send and receive information while incarcerated they do not have a constitutional right to a particular form of communication[.]" *Edwards v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 9:19-CV-254 (MAD/ATB), 2019 WL 1978803, at *5 (N.D.N.Y. May 3, 2019) (internal citations omitted);

---

[4] The fact that Plaintiff was not allowed to shower to decontaminate himself after being pepper-sprayed, however, is relevant to his excessive force claim because it supports the inference that Defendant Daniel did not temper her use of force, as discussed in more detail above.

11

*Fuller v. Darr*, No. 4:09-CV-96 (CDL), 2010 WL 691452, at *5 (M.D. Ga. Feb. 23, 2010) ("There is no free-standing constitutional right for a prisoner to use the telephone while incarcerated."); *see also Holt v. Bright*, No. 4:19CV01438, 2020 WL 224575, at *3 (N.D. Ohio Jan. 15, 2020) ("[W]hile prisoners have a First Amendment right to communicate with the outside world, they do not have a constitutional right to a particular form of communication, such as access to email or telephone."). Plaintiff has not alleged that he was prohibited from all forms of communication with individuals outside of prison. (Doc. 10, at 5). Instead, he alleges that he was temporarily denied the use of his preferred method of communication. *Id*. Standing alone, that allegation fails to state a First Amendment claim. *See, e.g.*, *Ellis*, 415 F. App'x at 218 (holding that "limited access to a telephone" was not serious enough to rise to level of constitutional violation); *Holt*, 2020 WL 224575, at *3 ("Given that Plaintiff has no *per se* constitutional right to . . . telephone access, restrictions on that access for a limited period of time does not violate Plaintiff's First Amendment rights.").[5]

The Court contemplated whether Plaintiff may have intended to allege that his phone access was restricted as a disciplinary measure, which is a relatively common occurrence in detention facilities. However, even if Plaintiff is attempting to allege that he was not given due process before being placed on a 30-day phone restriction, he has still failed to state a claim. The Due Process Clause of the Fourteenth Amendment protects against deprivations of "life, liberty, or property without the due process of law." U.S. Const. amend. XIV. To establish a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must generally show that a person acting under color of state law deprived him of a constitutionally protected liberty or property interest without constitutionally adequate process. *See, e.g.*, *Foxy Lady, Inc. v. City of Atlanta*, 347 F.3d

---

[5] Plaintiff does not allege any facts that could suggest his temporary inability to use the phone implicates his right of access to the courts or otherwise impeded his access to the courts.

1232, 1236 (11th Cir. 2003).

"Whether an inmate has a protected liberty interest that would entitle him to due process protections 'is often a difficult determination in the context of a prison, because prisoners have <u>already</u> been deprived of their liberty in the ordinary sense of the term.'" *Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1346 (11th Cir. 2016) (quoting *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999)). The Supreme Court of the United States has therefore "made clear that there are two circumstances in which a prisoner can be further deprived of his liberty such that due process is required." *Bass*, 170 F.3d at 1318. First, a prisoner is entitled to due process "when an increased restraint 'exceed[s] [his] sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Jacoby*, 835 F.3d at 1346 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (alterations in original)). Second, a prisoner is entitled to due process if a change in the prisoner's conditions of confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* (quoting *Sandin*, 515 U.S. at 484).

Plaintiff's allegations are devoid of any facts suggesting that Defendants took any sort of action that unexpectedly altered the terms of his imprisonment, such as revocation of good time credit. *See, e.g.*, *Smith v. Deemer*, 641 F. App'x 866, 867 (11th Cir. 2016) ("A hallmark example of action that unexpectedly alters an inmate's term of imprisonment is the revocation of good-time credit."). Accordingly, Plaintiff must demonstrate that the denial of due process caused him to suffer an "atypical and significant hardship." *Sandin*, 515 U.S. at 484.

Plaintiff only alleges that his phone privileges were restricted. While these types of restrictions are "concededly punitive," they do not generally "present a dramatic departure from the basic conditions of [Plaintiff's] indeterminate sentence." *Sandin*, 515 U.S. at 485. In other

words, Plaintiff has not pleaded sufficient facts to permit the Court to conclude that these restrictions were harsh enough to amount to the deprivation of a constitutional liberty interest that entitled him to due process. *See, e.g.*, *Smith*, 641 F. App'x at 867-68 (applying "liberty-interest analysis prescribed by *Sandin*" and holding that sanctions which included fifteen to thirty days of deprivation of private property, limited out-of-cell time, and restricted library, phone, and television access were not severe enough to implicate a liberty interest protected by the Due Process Clause); *see also Butler v. Underwood*, No. 5:12-CV-1 (MTT), 2012 WL 1932951, at *2-3 (M.D. Ga. Apr. 25, 2012) (prisoner who received ninety days each of telephone restriction, store restriction, package restriction, and impoundment of personal property as a result of disciplinary violation did not state a cognizable due process claim). Accordingly, these claims should also be dismissed.

## CONCLUSION

Based on the foregoing, Plaintiff's motion for leave to proceed IFP (Doc. 11) is **GRANTED**, and Plaintiff's motion for appointed counsel (Doc. 8) is **DENIED.** Plaintiff's claims that Defendant Daniel used excessive force against him shall proceed for further factual development, but it is **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED without prejudice.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the Honorable W. Louis Sands, Senior United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. The parties may seek an extension of time in which to file written objections, provided a request for an extension

is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

### ORDER FOR SERVICE

Having found that Plaintiff's claims against Defendant Daniel require further factual development, it is accordingly **ORDERED** that service be made on that Defendant and that she file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the PLRA. Defendant is reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

### DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

### DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendant is similarly advised that she is expected to diligently defend all allegations made against her and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

### FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party

is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendant shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of Defendant's answer or dispositive motion (whichever

comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred-twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED and RECOMMENDED**, this 15th day of September, 2025.

                                                            s/ **ALFREDA L. SHEPPARD**
                                                            UNITED STATES MAGISTRATE JUDGE